UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BENJAMIN WEISS,

    Plaintiff,

        v.

JACKSON LAUGHLIN,  AUBRIE
PAGANO, and BINSTAR, INC.,

    Defendants.

Civil Action No.:

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff Benjamin Weiss brings this action against Defendants Binstar, Inc., Jackson

Laughlin and Aubrie Pagano because they refused to pay him his wages for eighteen months, and

as to Pagano and Laughlin because they trashed his reputation.

More specifically, when Mr. Laughlin and Weiss founded Binstar, Inc., the Company had

very little capital, so they made a simple arrangement.  Both would earn $150,000 salary, and as

soon as the Company raised capital, Mr. Weiss would be caught up.  It worked, and for those

first eighteen months, Jackson Laughlin was paid in full, but when the money came in, Mr.

Laughlin and his new partner Aubrey Pagano welched on the deal.  When Mr. Weiss finally

demanded his wages, he was terminated in retaliation.  Then, Aubrie Pagano, the New York City

based venture capital investor and Board member of Binstar, Inc., decided to double-down and

she and Mr. Laughlin sought to ruin Mr. Weiss's reputation.  Ms. Pagano and Mr. Laughlin

falsely spread a knowing lie – that Mr. Weiss was terminated for "misrepresenting his

professional background."  Nothing could be further than the truth.  Yet, given Pagano and

Laughlin's careless conduct, Mr. Weiss finds himself having to defend against this lie in his business community.

Mr. Weiss brings this action to recover for the damages caused to him.

## THE PARTIES

1. Plaintiff Benjamin Weiss ("Mr. Weiss") served as Head of Supply for Binstar, Inc. Mr. Weiss is a California resident.

2. Defendant Binstar, Inc. ("Binstar" and the "Company") is a Delaware-based corporation which conducted its business in the Commonwealth of Massachusetts, operating three retail stores within Massachusetts.

3. Defendant Jackson Laughlin ("Mr. Laughlin") was the Chief Executive Officer of Binstar, and also served as its President, Treasurer and Director. Mr. Laughlin is a resident of Massachusetts. Mr. Laughlin was also at all relevant times Mr. Weiss' direct supervisor, and controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar.

4. Defendant Aubrie Pagano ("Ms. Pagano") is a venture capitalist whose company, Alpaca VC, was an investor in Binstar, and she served on its Board of Directors. Ms. Pagano is a resident of New York. Upon information and belief, Ms. Pagano at all relevant times controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar.

## JURISDICTION AND VENUE

5. The Court has diversity jurisdiction under 28 U.S.C. § 1332.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the asserted claims occurred herein.

2

7.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8.     Mr. Weiss has satisfied all prerequisites and conditions precedent necessary to seek remedy against Defendants by this action.

### PROCEDURAL HISTORY

9.     On February 18, 2025, Mr. Weiss commenced this action in this Court, captioned *Benjamin Weiss v. Binstar, Inc., et al.*, Civil Action No. 1:25-cv-10407-PBS, asserting the claims set forth below, which arise from Defendants' failure to pay his wages and from false statements concerning the reasons for his termination.

10.     Defendants Laughlin and Pagano moved to dismiss the Complaint and to compel arbitration, relying on the arbitration provision in the parties' Employee Proprietary Information Agreement (the "Agreement"), which provided for arbitration in Austin, Texas in accordance with the rules of the American Arbitration Association (the "AAA"). In the alternative, Defendants sought dismissal under the Agreement's forum-selection clause.

11.     On October 24, 2025, United States Magistrate Judge Jennifer C. Boal issued a Report and Recommendation recommending that the motions be granted and that Counts I, II, III, and VI be referred to arbitration or, in the alternative, dismissed pursuant to the forum-selection clause.

12.     On December 22, 2025, over Mr. Weiss' objections, the Court (Saris, J.) adopted the Report and Recommendation and dismissed this action so that Mr. Weiss's claims could be resolved in arbitration.

13.     In compliance with the Court's order, Mr. Weiss timely initiated arbitration. On March 26, 2026, he filed a Demand for Arbitration with the AAA, which docketed the matter as

Case No. 01-26-0001-4763 and named Binstar, Jackson Laughlin, and Aubrie Pagano as Respondents.

14.    Under the Agreement, the Company was responsible for the administrative fees associated with the arbitration, apart from a limited initiation fee. In accordance with its applicable Employment Arbitration Rules and the Employment Due Process Protocol, the AAA requested the required filing fee from the Respondents.

15.    By that time, however, Binstar – the entity the Agreement made responsible for those fees – had been administratively dissolved and no longer existed as a functioning entity capable of paying the costs of the arbitration the Agreement required.

16.    The Respondents failed and refused to pay the filing fee that the AAA required in order to proceed. They did not request an extension, propose any alternative arrangement, or otherwise participate in the arbitration they had demanded.

17.    On June 15, 2026, the AAA administratively closed the arbitration. The AAA advised the parties that, because the employer had failed to comply with the Employment Arbitration Rules and the Employment Due Process Protocol, the AAA may decline to administer any future employment matter involving the Respondents, and it requested that the Respondents remove the AAA's name from their arbitration agreements. A true and accurate copy of the AAA's June 15, 2026 closure letter is attached as Exhibit 1.

18.    As a result of Defendants' conduct, no arbitral forum remains available to Mr. Weiss. Defendants demanded arbitration, obtained a court order directing it, and then refused to pay the fees necessary to proceed, causing the AAA to terminate the proceeding.

19.    By defaulting in the very arbitration they compelled, Defendants are "in default in proceeding with such arbitration" within the meaning of 9 U.S.C. § 3 and have waived and

forfeited any right to compel arbitration of Mr. Weiss's claims or to enforce the Agreement's related forum-selection provision.

20.     This dispute, moreover, has no connection to Texas. Binstar conducted its business in Massachusetts; the wages and pay decisions at issue concern that Massachusetts-based employment and were made by Laughlin, a Massachusetts resident; and Pagano resides in New York. No Defendant resides in Texas, none of the operative events occurred in Texas, and the witnesses and records relevant to this dispute are located in Massachusetts, not Texas.

21.     Defendants' own conduct confirms that these claims belong in Massachusetts. While insisting in this Court that Mr. Weiss' wage claims must be arbitrated in Texas, Defendant Laughlin filed his own action against Binstar and Pagano in the Massachusetts Superior Court (Suffolk County, No. 2584CV01625-BLS1) on June 11, 2025 – just days after he had moved in this Court to compel arbitration.  In that action, Mr. Laughlin asserted claims under the same Massachusetts Wage Act and alleging that jurisdiction and venue are proper in Massachusetts. That action makes no reference to Texas. A true and accurate copy of Laughlin's Massachusetts Superior Court complaint is attached as Exhibit 2.

22.     Defendant Pagano is a named co-defendant in Laughlin's Massachusetts action; she has not sought to compel arbitration or a Texas forum in that case and has submitted to the jurisdiction of the Massachusetts courts. Having themselves invoked the Massachusetts courts and the Massachusetts Wage Act to litigate the same subject matter, and having consented to Massachusetts jurisdiction, Defendants cannot consistently maintain that Mr. Weiss' parallel claims must be sent to Texas. That Massachusetts action is active and substantial, concerning the same Binstar collapse and overlapping parties at issue here, as reflected in the materials filed in that case, a true and accurate copy of which is attached as Exhibit 3.

23.     Mr. Weiss' claims are therefore properly before this Court, and he brings this action to adjudicate them on the merits.

## STATEMENT OF FACTS

24.     In 2022, Mr. Weiss is an entrepreneur who, with Defendant Jackson Laughlin, co-founded Binstar, Inc.

25.     BinStar was a Massachusetts-based ultra-discount retailer.  Bin stores sell highly discounted consumer goods (returned e-commerce goods, overstock and other excess inventory) with a daily improving price model.  There are hundreds of bin stores nationwide, but few in the northeast region.  As co-founder, Mr. Weiss was involved in every element of the business, including designing the Company's corporate and brand strategy, raising capital, negotiating with suppliers and recruiting employees, board members and advisors.

26.     Mr. Weiss began working as Co-Founder and Head of Supply for Binstar in April 2022, and he was successful.  When Mr. Weiss took over sole responsibility for purchasing, his acumen led to an increase in Gross Margins from the mid-teens to over 55%.  Additionally, Mr. Weiss's investor network produced two term sheets for the business including an offer of approximately $4 Million of bridge financing in May 2024.  Mr Weiss's contributions to the business were acknowledged by Mr. Laughlin and the rest of the Board of Directors through awarding Mr. Weiss a sizable founder's equity grant and an additional equity option top-up grant after the November 2023 funding round.

27.     When Mr. Weiss and Mr. Laughlin began the company, they agreed to each receive a base salary of $150,000 per year.  As the Company could not afford the salaries at that time, Mr. Weiss relied on Mr. Laughlin's promise that he would be paid in full and caught up to Mr. Laughlin as soon as the Company could afford to do so.  This would include the accrued

amounts, and the promise induced Mr. Weiss to continue his efforts.  Mr. Laughlin had no intention to make good on that promise.

28.    Mr. Laughlin began taking his $150,000 salary on or about Spring/Summer of 2022.

29.    Finally, at the time of the November 2023 funding round, Mr. Weiss began receiving his salary of $150,000.  But Mr. Laughlin and Defendant Aubrie Pagano both refused to pay Mr. Weiss his accrued salary and refused his request for a formal employment agreement.

30.    Mr. Weiss had worked without pay for a period of approximately eighteen (18) months, and the retroactive salary payment was never made.

31.    In late May 2023, Binstar was facing a cash crunch due to Mr. Laughlin's profligate spending of company funds.  Mr. Laughlin approached Mr. Weiss minutes before a Boad of Directors meeting and told Mr. Weiss that Mr. Weiss needed to cut his wages to zero as part of a plan to "show contrition" to the rest of the Board for Mr. Laughlin's over-spending.  In subsequent conversations with Mr. Laughlin, Mr. Weiss resisted, noting specifically that he'd worked for free 18 months prior to receiving venture funding and it was unfair to make him the scapegoat for Mr. Laughlin's poor financial decisions.  Mr. Weiss' wages were cut to zero for a period of days until Mr. Weiss told Mr. Laughlin that he would complain to the rest of the Board of Directors if Mr. Laughlin did not return Mr. Weiss' wages to his original salary.

32.    After an approximately eighteen-month period of non-payment, Binstar began paying Mr. Weiss salary at the previously agreed upon annual rate of $150,000.

33.    Binstar did not make any payments towards the amounts due.

34.    Mr. Weiss repeated his request for retroactive payment.

35.    Mr. Weiss' employment was terminated on July 17, 2024.

36. In response to Mr. Weiss' complaint about the non-payment of his wages, upon information and belief one or both of Ms. Pagano and Mr. Laughlin contacted members of the financial community told them that Mr. Weiss was fired for "misrepresenting his professional background" – a knowingly false statement made to harm Mr. Weiss' reputation.

37. Upon information and belief, the decisions to refuse payment of Mr. Weiss' wages for the eighteen (18) month period in question was made by Defendants Laughlin and Pagano.

38. At all times during his employment, Mr. Weiss was under the control and direction of Mr. Laughlin and Ms. Pagano with the performance of his services for Binstar.

39. Upon information and belief, Defendants Laughlin and Pagano both controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Binstar.

40. Defendants had the benefit of Mr. Weiss' employment, work product and reputation.

41. Mr. Weiss was a full-time employee of Binstar, and all of the services that Mr. Weiss performed for Binstar were within the usual course of business of the company.

42. The Defendants' improper actions noted above and refusal to pay all amounts due to Mr. Weiss have had a detrimental and damaging impact him, including but not limited to the following: (i) retaliating against Mr. Weiss for her complaints of non-payment of wages, (ii) tarnishing his reputation, and (iii) causing him emotional distress, and other costs and expenses.

## CLAIMS FOR RELIEF

### Count I
### Massachusetts Wage Act – Unpaid Wages
### (Defendants Binstar, Pagano and Laughlin)

43.     Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

44.     Defendants Binstar and Laughlin failed and/or refused to pay Mr. Weiss his full wages, in violation of the Massachusetts Wage Act.

45.     Defendant Laughlin was the Chief Executive Officer of Binstar, and also served as its President, Treasurer and Director of Binstar, and thus has individual liability for damages under the Wage Act.

46.     Defendant Pagano controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar, and thus, as an agent having management of the corporations, she has individual liability for damages under the Wage Act.

47.     As a result, Mr. Weiss has incurred damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

### Count II
### Massachusetts Wage Act Retaliation
### (Defendants Laughlin and Pagano)

48.      Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

49.     Mr. Weiss complained about the non-payment of his wages.

50.     Defendants Laughlin and Pagano retaliated against Mr. Weiss for his protected

conduct.

51.    In response, among other things, Defendants Laughlin and Pagano falsely notified investment community members that he was terminated for misrepresenting his professional background, harming his reputation.

52.    In addition to the monetary damages, Mr. Weiss also suffered emotional distress and loss of business opportunities as a result.

53.    As a result, Mr. Weiss has incurred harm and loss in an amount to be determined at trial, along with multiple damages, attorneys' fees and costs of litigation.

## Count III
### Defamation of Character
### (Defendants Laughlin and Pagano)

54.    Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

55.    Defendants Laughlin and Pagano falsely notified investment community members that he was terminated for "misrepresenting his professional background," or words to that effect.

56.    This statement was knowingly false or made with reckless disregard to its falsity, and was published to third parties by Defendants Laughlin and Pagano.

57.    Defendants Lauhglin and Pagano intended to harm Mr. Weiss by their actions.

58.    In addition to monetary damages, Mr. Weiss also suffered emotional distress and loss of business opportunities as a result.

59.    As a result, Plaintiff has incurred harm and loss in an amount to be determined at trial.

## Count IV
### Breach of Contract
### (Binstar)

60.    Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

61.    Defendants Binstar and Laughlin failed and/or refused to pay Mr. Weiss his wages.

62.    As a result of the Defendants' breach of the agreement set forth above, Mr. Weiss has incurred damages in an amount to be determined at trial.

## Count V
### Quantum Meruit/Unjust Enrichment
### (Binstar)

63.    Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

64.    Mr. Weiss conferred a measurable benefit upon Binstar.

65.    Binstar accepted services and expenses from Mr. Weiss for which a reasonable person would have expected to receive their guaranteed compensation and role.

66.    Mr. Weiss provided his services with the reasonable expectation of receiving his guaranteed compensation.

67.    In accepting these services without compensating Mr. Weiss, Binstar was unjustly enriched.

68.    Mr. Weiss has incurred damages in an amount to be determined at trial.

## Count VI
### Fraud in the Inducement
### (Laughlin)

69.    Mr. Weiss repeats and incorporates herein the above paragraphs as if each were

set out in its entirety.

70.     As set forth above, to induce Mr. Weiss to continue working for Binstar, Defendant Laughlin made a false promise with regard to paying his compensation.  He did so in his capacity as Chief Executive Officer.

71.     Mr. Laughlin had no intention of paying Mr. Weiss.

72.     Mr. Laughlin's misrepresentation was intentional and knowing.

73.     As a result of Mr. Weiss' reliance on those misrepresentations, Mr. Weiss has incurred damages in an amount to be determined at trial.

## Count VII
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Binstar)

74.     Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

75.     Binstar had an obligation to act in good faith in the performance of its contractual duties to Mr. Weiss.

76.     Binstar and Laughlin failed to act with good faith and fair dealing in the performance of its duties to Mr. Weiss.

77.     As a result, Mr. Weiss has incurred damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that, and moves this Court to:

(A)     Determine the damages sustained by Plaintiff as the result of Defendants'

12

unlawful non-payment of wages and retaliation in violation of the Wage Act, and award those damages, trebled, against Defendants and in favor of Plaintiff, together with such prejudgment interest as may be allowed by law;

(B)    Award Plaintiff his costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and costs;

(C)    Determine the damages sustained by Plaintiff as the result of Defendants' breach of contract and his other claims and award those damages against Defendants and in favor of Plaintiff, together with such prejudgment interest as may be allowed by law;

(D)    Enter a permanent injunction ordering Defendants henceforth to refrain from engaging in the unlawful conduct described in this Complaint and to take all necessary measures to ensure that it is at all times in compliance with such injunction; and,

(E)    Grant Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BENJAMIN WEISS,
By his counsel,

/s/ Benjamin Flam

_____
Philip J. Gordon (BBO# 630989)
Benjamin Flam (BBO# 671853)
GORDON LAW GROUP, LLP
585 Boylston Street
Boston, MA 02116
Phone: (617) 536-1800
Fax: (617) 536-1802
pgordon@gordonllp.com
bflam@gordonllp.com

Dated: June 27, 2026